**SIGNED THIS: November 22, 2017**

_____
**Mary P. Gorman**
**United States Chief Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | Case No. 17-70310 |
| STEPHANIE ELAINE SWISHER, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| JEFFREY D. RICHARDSON, ) | |
| Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 17-07012 |
| ) | |
| STEPHANIE ELAINE SWISHER, ) | |
| ) | |
| Defendant. ) | |

# O P I N I O N

This matter is before the Court following a trial on a two-count complaint

filed by Jeffrey D. Richardson, the Chapter 7 trustee ("Trustee"), objecting to the discharge of Stephanie Elaine Swisher ("Debtor"). Because the Trustee met his burden of proof on all required elements of both counts of his complaint, the Debtor's discharge will be denied.

## I. Factual and Procedural Background

The Debtor filed her voluntary Chapter 7 petition, schedules, and Statement of Financial Affairs ("SOFA") on March 8, 2017. On her Schedule A/B: Property, the Debtor stated that she had no cash on hand but did have $232 in a savings account at the Taylorville Community Credit Union ("TCCU"). In response to the question at paragraph 28 of Schedule A/B regarding tax refunds that might be owed to her, the Debtor disclosed that she "got a tax refund of $9707.05 federal and $895.00 state." Also at paragraph 28 the Debtor identified the current value of the tax refunds she owned as $10,106. On her Schedule C: The Property You Claim as Exempt, the Debtor claimed as exempt, among other things, $653 of the $10,106 in tax refunds and the entire $232 balance in her TCCU savings account. On her SOFA, the Debtor stated she had paid three separate creditors more than $600 each within the 90 days prior to filing her petition: $1000 to her bankruptcy attorney, $1600 to her landlord, and $930.06 to the First Mid America Credit Union, apparently for three installment payments on an auto loan.

The Trustee held the initial meeting of creditors on April 12, 2017. At the meeting, the Debtor admitted that she had cash on hand at the time of filing but had not disclosed the funds on her schedules because the money was "spoken for."

Subsequently, the Trustee filed his two-count adversary complaint objecting to the Debtor's discharge. Count I alleges that the Debtor should be denied a discharge for knowingly and fraudulently making a false oath on her schedules concerning whether she had cash on hand at the time of filing bankruptcy. Count II alleges that the Debtor should be denied a discharge for concealing the cash she was holding with the intent to hinder, delay, or defraud the Trustee.

After the adversary complaint was filed, the Debtor amended her Schedule A/B disclosing that she had $3500 in cash in her possession when she filed her petition. She also filed an answer to the Trustee's complaint in which she admitted that she had undisclosed cash on hand when she filed her bankruptcy but denied that she knowingly and intentionally made a false oath or intended to hinder, delay, or defraud the Trustee or her creditors.

At trial, the Debtor testified that on February 23, 2017, she received a direct deposit into her TCCU savings account of her federal tax refund in the amount of $8507.05. She had previously received a $1200 advance on her federal refund from her tax preparer, which accounted for the discrepancy between what was direct deposited and what was shown as due on her return. The Debtor testified that on February 27, 2017, she made two withdrawals from her bank account for a total of $3000 and another withdrawal the following day of $1800. She said that all of the money from those withdrawals was spent prior to filing bankruptcy. She admitted, however, that she had no records to show exactly how the money was spent.

The Debtor admitted withdrawing $3500 in cash from her TCCU savings account two days prior to filing her petition. She testified that of the $3500, $1000

was paid to her bankruptcy attorney, about $900 was used for a deposit for a new apartment, and the remainder was used for moving and other expenses. Again she had no records of her exact expenditures and could not say precisely when the expenditures were made. Although the Debtor said she was not sure exactly how much cash she had on the day she filed her petition, she testified that she had no more than $3500 in cash on that day. The Debtor testified that because she only had a savings account and not a checking account, it was common practice for her to withdraw money from her TCCU account, either in cash or by money order, to pay bills.

The Debtor stated that she is a single mother of three children and had filed her bankruptcy to stop a garnishment of her wages. She has earned her G.E.D. and is employed full time as a residential counselor.

The parties offered brief argument at the close of the hearing. The matter is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Objections to discharge are core proceedings. *See* 28 U.S.C. §157(b)(2)(J). This matter arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

### III. Legal Analysis

*A. Count I - False Oath*

A Chapter 7 debtor is not entitled to receive a discharge if such debtor "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). To deny a debtor's discharge pursuant to §727(a)(4)(A), a plaintiff must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011) (citations omitted). Fraudulent intent can be established by proof of a reckless disregard for the truth; proof of actual, intentional misrepresentation is not required. *See In re Kempff*, 847 F.3d 444, 449 (7th Cir. 2017) (quoting *Stamat*, 635 F.3d at 982). The objecting party must prove each element by a preponderance of the evidence. *Stamat*, 635 F.3d at 978.

Statements made by a debtor at a meeting of creditors or on a debtor's petition, schedules, and SOFA are considered to be statements made under oath for purposes of §727(a)(4)(A). *Spohn v. Carney (In re Carney)*, 558 B.R. 250, 260 (Bankr. N.D. Ill. 2016). A fact is material if it relates to the debtor's business affairs, the debtor's estate, or the discovery or disposition of the debtor's property. *Stamat*, 635 F.3d at 982 (citing *Retz v. Samson, et al. (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)).

The Debtor does not dispute that the statements on her schedules were made under oath or that her statement on her Schedule A/B that she had no cash on hand on the date of filing was false. She admitted that she knew it was false

at the time she signed the document. She also does not dispute that the existence of the $3500 in cash she had on hand at the time of filing was material to her case. Thus, the only disputed issue is whether the Debtor acted with fraudulent intent.

The Debtor testified that her failure to disclose the cash was not made with the intent to defraud. She asserted that her only intention was to make sure that the money was available to pay upcoming rent and moving expenses. But the fact that the Debtor wanted to use the funds for legitimate purposes does not excuse her failure to disclose the cash. To the contrary, the fact that she had clear intentions for the use of the money supports a finding that she acted with fraudulent intent. She did not want to give up the funds to the Trustee and her creditors, so she lied about the existence of the cash.

In closing argument, the Debtor's attorney, relying on *Ivory v. Barbe (In re Barbe)*, 466 B.R. 737, 747 (Bankr. W.D. Pa. 2012), argued that the Debtor's failure to disclose the cash should not result in denial of her discharge. In *Barbe*, a creditor objected to the debtor's discharge, in part, because she scheduled a bank account balance as $1200 when the actual balance in the account on the date of filing was $9578. *Id.* at 746. The debtor in *Barbe* explained that the understatement was "due to the existence of checks that she wrote and issued on such account pre-petition that had not yet been presented for payment on her bankruptcy petition filing date." *Id.* at 747. The *Barbe* court found the debtor's explanation to be understandable and found no intent to defraud. *Id.*

*Barbe* is clearly distinguishable from the case here because the debtor in *Barbe* issued and delivered or mailed checks prepetition and, accordingly, believed

that she had actually transferred the funds before filing bankruptcy. Here, however, the Debtor had not transferred all of her cash before filing, and she had no reason to discount the amount that remained on hand based on her intent to spend the money later. The cash not transferred before filing was property of the estate and should have been disclosed.

The Debtor's attorney also argued that the Debtor, as a lay person with somewhat limited education, would not have known what the phrase "fraudulent intent" means. That may be true but it is not the issue here. As the Trustee pointed out and the Debtor admitted, she knows what "cash" is and presented no credible reason for why she did not truthfully answer the question about cash on hand on her Schedule A/B.

The Debtor acted with fraudulent intent in hiding the fact that she had cash in her possession at the time she filed bankruptcy. The Trustee met his burden of proof with regard to his allegations of false oath. 11 U.S.C. §727(a)(4)(A). The Debtor's discharge will be denied.

*B. Count II - Fraudulent Concealment*

A debtor's discharge may also be denied if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition[.]" 11 U.S.C. §727(a)(2)(B). In order to prevail on an objection to discharge under §727(a)(2)(B), a plaintiff must prove that (1) the debtor transferred, removed, destroyed, mutilated, or concealed the debtor's property; (2) after the date of the petition; and (3) did so with the intent to hinder, delay, or defraud the trustee or

creditors. 11 U.S.C. §727(a)(2)(B); *Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 992 (Bankr. N.D. Ill. 1992). A plaintiff has the burden of proving all elements by a preponderance of the evidence. *In re Scott*, 172 F.3d 959, 966-67 (7th Cir. 1999).

Here, the Debtor admitted that she did not disclose—and thereby effectively concealed—the cash she had in her possession when she filed bankruptcy. She also admitted that she transferred the cash for her own purposes after the filing and in disregard of the Trustee's rights in the cash on behalf of the bankruptcy estate. She only disputes that she acted with the intent to hinder or delay her creditors or the Trustee.

The Debtor argues that her lack of intent to conceal the cash is evidenced by the fact that she provided her bank statements to the Trustee and later amended her Schedule A/B to disclose the cash. But the bank statements were provided only after the Trustee raised questions and requested the documents, and the amended schedule was filed only after the objection to her discharge was filed. Actions taken by the Debtor after her concealment was discovered do not mitigate the original concealment. The Debtor intentionally concealed the cash so that she could use it for her own purposes after filing. That conduct evidences an intent to defraud creditors.

Further, a debtor's intent in concealing or transferring assets need not rise to the level of intending to defraud in order to deny a discharge; proof of a simple intent to hinder or delay will suffice. *Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 568-69 (7th Cir. 1989). Hindering generally refers to conduct that impedes or obstructs the efforts of another. *Crews v. First Colony Life*

*Ins. Co. (In re Barker)*, 168 B.R. 773, 779 (Bankr. M.D. Fla. 1994). Delaying generally involves conduct that postpones efforts or puts the effectiveness of those efforts off into the future. *First State Bank of Bloomington v. Cannell (In re Cannell)*, 2013 WL 2467787, at *3 (Bankr. C.D. Ill. June 7, 2013), *aff'd*, 2014 WL 3725929, at *1 (C.D. Ill. July 28, 2014). "Actual intent may be proved by direct evidence, such as an admission, or by circumstantial evidence or inferences drawn from a debtor's course of conduct." *Id.* (citations omitted). Based on the Debtor's testimony, her intent was to use the cash to pay her own expenses. By intentionally concealing the cash from the Trustee, the Debtor, at a minimum, intended to hinder or delay the Trustee. The Trustee met his burden of proof under §727(a)(2)(B). The Debtor's discharge will be denied.

### *C. Bankruptcy Planning*

In his remarks at the conclusion of the trial, the Trustee stated that he took no pleasure in seeking to deny the Debtor's discharge. Indeed, she is a single mother supporting three children on a meager income. But she chose to lie on her schedules about the extent of her assets, limited as they were, and ignoring that conduct is not an option for the Trustee or this Court. What is most troubling about this case, however, is that even though the Debtor affirmatively concealed the cash she had on hand when she filed, she obviously had no idea of the serious consequences of her actions. Had her attorney pursued even the most basic of questions with her before filing, the results here most likely would have been

different.[1]

The Debtor disclosed to her attorney that her tax refunds for 2016 totaled $10,602.05. In response to the question on Schedule A/B about refunds "owed to" the Debtor, that amount was disclosed even though it had apparently already been received by the Debtor. And, inexplicably, the current value of the refunds was shown on the same line as $10,106.00—an amount that the Debtor clearly did not have on the date of filing. Further, the current value of $10,106.00 was repeated on the Debtor's Schedule C with $653 of that amount claimed as exempt. The only fair reading of such documents suggested that the Debtor had $9453 in non-exempt refunds when she filed her bankruptcy. That was not true, the Debtor knew it was not true, and her attorney should have inquired further about the issue regardless of whether he thought it was true.

The Debtor's attorney had to know that the Trustee would pursue the $9453 that the schedules suggested was available. And if he had asked the Debtor, she would have explained that $1200 of the amount was received as an advance from her tax preparer and had already been spent and much of what she had just received in actual refunds had also been spent. It is not disputed that the Debtor paid her landlord $1600 or that she used some of the refund money to pay bills and living expenses. If a complete inquiry had been made, the Debtor might have been able to better document those expenditures when questioned about them

---

[1] The Court has no direct knowledge, of course, of what the Debtor and her attorney discussed before filing the bankruptcy case. But the disclosures at paragraph 28 of Schedule A/B were clearly wrong and seemingly conflicted with the information provided elsewhere about how much money the Debtor had, either in cash or in her savings account. The attorney could not have fully investigated the Debtor's affairs as required and still made such errors. 11 U.S.C. §707(b)(4)(C).

later, and the Debtor's attorney would have learned that the Debtor had $3500—or maybe $2500 after paying him—in cash on hand. He then would have been obligated to explain to her that she would lose the non-exempt portion of those funds if she filed with the cash on hand. The Debtor then might have chosen to wait to file her case until she had used the funds as needed to secure a new apartment and to pay moving expenses for her family.

Bankruptcy planning has a bad name because the term is often associated with conduct involving fraudulent transfers or the hiding or concealing of assets. But bankruptcy planning is a required part of the representation of any debtor. Attorneys must advise debtors about exemptions, whether particular assets are exempt, and whether filing at a particular time is wise. Timing a bankruptcy filing to maximize the benefits of filing is not wrong. To the contrary, an attorney who overlooks timing issues, such as those that arose here, does not provide competent representation to the client. The Debtor wanted to file a bankruptcy to stop a garnishment. In hindsight, however, suffering through a few more weeks of the garnishment would have been a much better choice for the Debtor than lying about the cash she had on hand and losing her discharge.

### IV. Conclusion

The Debtor knowingly and fraudulently made a false oath in connection with this case when she failed to disclose on her schedules that she had as much as $3500 in cash on hand when she filed. Her testimony at trial that she did not disclose the cash because it was "spoken for" demonstrates her intent to defraud the Trustee. In addition, her failure to disclose the cash was a concealment that

was intended to hinder, delay, and defraud the Trustee and her creditors. Judgment will be entered in favor of the Trustee, and the Debtor's discharge will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###